BUSLER et al., Appellants,

v.

D & H MANUFACTURING, INC. et al., Appellees.

[Cite as *Busler v. D & H Mfg., Inc.* (1992), 81 Ohio App.3d 385.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–1175.

Decided June 16, 1992.

*Robert N. Black, Jr. Co., L.P.A.,* and *Robert N. Black, Jr.,* for appellants.

*Campbell, Hornbeck, Chilcoat & Veatch* and *Daniel F. Ryan,* for appellees.

PETREE, Judge.

Plaintiff Lewis Busler[1] appeals from the Franklin County Court of Common Pleas, which granted summary judgment against him on the basis of the Statute of Frauds and the parol evidence rule. On appeal, plaintiff presents the following assignments of error:

"I. The trial court erred in finding that there were no genuine issues of material fact.

"II. The trial court erred in granting summary judgment in favor of defendant."

Plaintiff Lewis Busler assigned all of his right, title, and interest in a contract to purchase the stock of a privately held, close corporation called "D & H Manufacturing, Inc." ("D & H") to his longtime business associate, defendant Cassius Sisler. In return, Sisler agreed to indemnify Busler for about $876,000 in bank loans that the two men borrowed to finance the D & H acquisition.[2]

---

1. Plaintiff Elliot Outlaw, an assignee of Busler's interest in D & H Manufacturing, Inc., also appeals herein. For clarity, we will refer to Busler as "plaintiff" herein.

2. The written assignment, which was signed on June 19, 1986, provides:
 " * * * [I]n consideration of One Dollar ($1.00) paid to Busler together with the mutual covenants and promises contained herein, the parties hereto agree as follows:
 " * * *
 "3. Sisler agrees to indemnify and hold Busler harmless of any liability arising from his execution and personal guaranty on loan documents by and between the Commercial Savings Bank of Upper Sandusky and the Company."

In this action, Busler maintains that, as additional consideration for the assignment, defendants also orally promised to convey D & H's land and building to him and pay him periodic rent for its use. He contends that he took part in the acquisition of D & H as a partner with Sisler and was represented in the transaction by Sisler's attorney, defendant David L. Chilcoat. Busler further alleges that Sisler and Chilcoat conspired to fraudulently induce him to sign the assignment in reliance on their oral promise to convey the real estate to him. In addition, he insists that they never paid or intended to pay the rents as promised. After the assignment, Busler worked for nine months managing the operations of D & H without pay, but the real estate was never transferred, despite Busler's repeated demands. Busler therefore seeks rescission of the assignment, money damages, or restitution from defendants.[3]

Considering defendants' motion for summary judgment and the conflicting evidence on whether an oral promise to convey real estate was made, a referee of the common pleas court found that plaintiff was precluded from pursuing any claims for the D & H real estate by virtue of the Statute of Frauds and the parol evidence rule. The trial court adopted the referee's report and recommendation and granted summary judgment to defendants.

The question presented by the assignments of error in this appeal is whether the trial court erred in granting summary judgment to defendants on the basis of the Statute of Frauds or the parol evidence rule.

## I

The Statute of Frauds provides that a contract to transfer an interest in land must be evidenced by some writing signed by the party to be charged.[4] "This statute serves to ensure that transactions involving a transfer of realty interests are commemorated with sufficient solemnity. A signed writing provides greater assurance that the parties and the public can reliably know when such a transaction occurs. It supports the public policy favoring clarity in determining real estate interests and discourages indefinite or fraudulent claims about such interests." *N. Coast Cookies, Inc. v. Sweet Temptations, Inc.* (1984), 16 Ohio App.3d 342, 348, 16 OBR 391, 398, 476 N.E.2d 388, 395.

In *Marion Prod. Credit Assn. v. Cochran* (1988), 40 Ohio St.3d 265, 533 N.E.2d 325, the Supreme Court of Ohio addressed the issue of whether a fraudulent inducement claim could overcome a Statute of Frauds defense.

---

**3.** Aside from Sisler and Chilcoat, the other named defendants are D & H and Sisler's sons, John and Lee, who now manage D & H.

**4.** See R.C. 1335.04 and 1335.05.

The plaintiffs in that case mortgaged their farm to a bank by signing a written agreement. When the bank foreclosed, the plaintiffs claimed that the bank had also orally agreed, contrary to the terms of the signed agreement, that the mortgage would be released when plaintiffs' son sold his crop. In light of the bank's representations, the plaintiffs asserted various contract and tort theories to vitiate the signed agreement, including fraud, fraud in the inducement, deceit, wrongful inducement, reformation, promissory estoppel, restitution, and part performance. However, the Supreme Court rejected these theories and enforced the agreement as it was written. While the court recognized the equitable principle that the Statute of Frauds may not be interposed in furtherance of fraud, the court nevertheless held that a fraudulent inducement claim cannot be made out by asserting that the wrongful inducement was a promise falling within the scope of the signed agreement but which was not ultimately contained in it.[5]

Although the allegations in the present case resemble those made in *Marion,* that case is not controlling, as the referee found. For, in this case, plaintiff presented evidence of a signed acknowledgement which may satisfy the Statute of Frauds.

Plaintiff filed a copy of a handwritten letter with the trial court that appears to be signed by Sisler.[6] In this undated letter, Sisler angrily wrote to Busler and told him that D & H was no longer Sisler's responsibility because he felt that Busler should not have told other people about Busler's "future involvement in certain real estate." Apparently, defendant Sisler felt this breach of secrecy would have a negative impact on the D & H transaction, the union, and future business.

Any signed memorandum is sufficient to satisfy the Statute of Frauds so long as it (1) identifies the subject matter of the agreement, (2) establishes that a contract has been made, and (3) states the essential terms with reasonable certainty. *N. Coast Cookies, Inc., supra,* 16 Ohio App.3d at 349, 16 OBR at 398, 476 N.E.2d at 396, citing 1 Restatement of the Law 2d, Contracts (1981) 336, Section 131. The memorandum may be written after the alleged oral promise occurred. See *McGilvery v. Shadel* (1949), 87 Ohio App.

---

5. We note that one commentator has criticized the *Marion* court for confusingly deciding that case on the basis of the Statute of Frauds when the real issue was the parol evidence rule. Shanker, Judicial Misuses of the Word Fraud to Defeat the Parol Evidence Rule and the Statute of Frauds (1989), 23 Akron L.Rev. 1.

6. This letter was not expressly authenticated by affidavit for purposes of summary judgment. However, defendant never objected to this in the trial court and, therefore, we may consider this letter herein. See *Biskupich v. Westbay Manor Nursing Home* (1986), 33 Ohio App.3d 220, 222, 515 N.E.2d 632, 634.

345, 43 O.O. 74, 95 N.E.2d 1. It does not have to be a formal memorial of the agreement. Rather, a signed acknowledgement of an oral promise can qualify as a memorandum which satisfies the statute, even if the acknowledgement repudiates the oral promise. Restatement, *supra,* at 347, Section 133, Illustration 4.

Here, the letter signed by Sisler, although ambiguous, appears to acknowledge that Busler was to be involved in the real estate of D & H. Considering the circumstances and the tenor of the letter, this language suggests that Sisler meant a transfer of the D & H real estate to Busler. Defendants have not submitted any evidence for summary judgment purposes to establish that Sisler was referring to some other real estate or some other involvement with it. Consequently, a genuine issue of material fact exists as to whether Sisler acknowledged an oral promise to transfer the D & H real estate.

## II

█ Another basis for the trial court's grant of summary judgement was the parol evidence rule. This misnamed and often misunderstood rule is not really a rule of evidence but instead is a rule of substantive law designed to protect the integrity of final, written agreements. *Charles A. Burton, Inc. v. Durkee* (1952), 158 Ohio St. 313, 49 O.O. 174, 109 N.E.2d 265, paragraph one of the syllabus. If contracting parties integrate their negotiations and promises into an unambiguous, final, written agreement, then evidence of prior or contemporaneous negotiations, understandings, promises, representations, or the like pertaining to the terms of the final agreement are generally excluded from consideration by the court. *Id.* at paragraph two of the syllabus; *Yoder v. Columbus & S. Elec. Co.* (1974), 39 Ohio App.2d 113, 68 O.O.2d 288, 316 N.E.2d 477. This rule is not confined to excluding merely parol communications; it excludes contrary written communications as well.

█ Notwithstanding, many Ohio cases have held that a party may offer evidence of prior or contemporaneous representations to prove fraud in the execution or inducement of an agreement. See, *e.g., Stegawski v. Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio App.3d 78, 84, 523 N.E.2d 902, 908. Indeed, without such evidence it would be difficult if not impossible to prove fraud. However, it is important to realize that the law has not allowed parties to prove fraud by claiming that the inducement to enter into an agreement was a promise within the scope of the integrated agreement but which was not ultimately included in it. *Id.* at 84, 523 N.E.2d at 908; *AmeriTrust Co. v. Murray* (1984), 20 Ohio App.3d 333, 335, 20 OBR 436, 438, 486 N.E.2d 180, 183. Hence, if there is a binding and integrated agreement, then evidence of prior or contemporaneous representations is not admissible to contradict the

unambiguous, express terms of the writing. Restatement, *supra*, at 136, Section 215.

 Although the assignment in the present case appears to be integrated, plaintiff may be able to avoid the operation of the parol evidence rule in this case on the theory that there was no consideration supporting the assignment. For if there was no consideration given by Sisler to Busler for the rights to the D & H stock, then there was no binding contract and the parol evidence rule would not apply.

Plaintiff's argument on this point is that the indemnification language contained in the assignment was not legal consideration because Sisler was already obligated to indemnify and hold Busler harmless under existing principles of partnership law. To support this argument, plaintiff relies on one of the few cases on this subject, *Pendleton v. Foley* (1925), 21 Ohio App. 118, 152 N.E. 778. In that case, the Lucas County Court of Appeals held that the transfer of a partner's entire partnership interest to his copartner implies that the purchasing partner assumed the debts of the partnership. Indeed, the majority of courts holds that, where a retiring partner sells his entire interest to a continuing partner, it is implied between the partners that the continuing partner agreed to assume the obligations and pay the debts of the partnership, in the absence of an agreement to the contrary. 1 Cavitch, Business Organizations (1992) 1186, Section 21.02[3].

While it is difficult to see how one can characterize the parties' relationship in this case as a general partnership, there is at least a question here as to whether the acquisition of D & H was carried on as a joint venture.

 A joint venture arises from a contractual association whereby parties contribute capital with the common purpose of carrying out a business venture under their common control and for their common gain. *Kahle v. Turner* (1979), 66 Ohio App.2d 49, 20 O.O.3d 111, 420 N.E.2d 127. Essentially, a joint venture is a partnership entered into for a single transaction or limited period of time. *Ford v. McCue* (1955), 163 Ohio St. 498, 56 O.O. 410, 127 N.E.2d 209. Hence, courts generally apply principles of partnership law to govern the relationship. *Al Johnson Constr. Co. v. Kosydar* (1975), 42 Ohio St.2d 29, 32, 71 O.O.2d 16, 18, 325 N.E.2d 549, 552.

Some facts in the record support the conclusion that the acquisition of D & H was carried on as a joint venture. Plaintiff alleged in his affidavit that he acquired D & H with Sisler as fifty-fifty partners. Defendants have not submitted any evidence to contradict this except for Sisler's affidavit, which concludes:

"I was not in a partnership arrangement with Lewis Busler regarding D & H Manufacturers, Inc., but we did agree to each purchase 50% of the shares of D & H, and Lewis Busler assigned his interest to me."

While there was no formal joint venture agreement, it is undisputed that Busler and Sisler pooled their capital and credit together to attempt to acquire a controlling share of the D & H stock. They jointly signed the bank loans, jointly signed the stock purchase agreement directed to D & H shareholders, are jointly referred to in the contracts executed to accomplish the transaction, and otherwise appear to have contributed joint efforts to the acquisition. Further, there appears to be some elements of mutual agency or control. For instance, Busler triggered the contract to purchase the D & H shareholder stock by signing on behalf of the two men. It is also alleged that he placed $376,000 in escrow with D & H attorneys to finance the stock purchase on behalf of the two men. Moreover, according to plaintiff, both parties stood to gain from the acquisition because it was contemplated that the parties would equally divide the company between them after the acquisition. Busler was to own the real estate and receive a fixed rent from it while Sisler would receive income from stock ownership. Busler asserted that he was a fifty-fifty partner.

It is true that shareholders in a close corporation cannot claim that their corporation was run as a joint venture in order to gain greater protection than that afforded by the corporation statutes. *Domo v. Stouffer* (1989), 64 Ohio App.3d 43, 580 N.E.2d 788; *Mills v. Mills* (1952), 70 Ohio Law Abs. 111, 127 N.E.2d 222. But here, Busler was not a shareholder at the time of the assignment. Rather, he assigned his interest in the stock of D & H several days before any of the existing D & H shareholder's tendered their stock under the stock purchase agreement.

In *Royal Appliance Mfg. Co. v. Fernengel* (Aug. 27, 1987), Cuyahoga App. No. 51268, unreported, 1987 WL 16189, the Eighth District Court of Appeals held that a genuine issue of material fact existed as to whether a group of shareholders in a close corporation were joint venturers for purposes of jointly selling their interest in a corporation. Since shareholders in a close corporation jointly selling a controlling stake in a company can be viewed as joint venturers, it should follow that mere purchasers attempting to jointly acquire a controlling stake in a company can be viewed as joint venturers as well.

Because there is a genuine issue of material fact as to whether the acquisition of D & H was carried on as a joint venture, there is an unresolved issue as to whether there was any consideration given for the assignment. If there was no consideration given, then the parol evidence rule does not bar

plaintiff from proving that an oral promise to convey the D & H real estate was additional consideration for the assignment.

Accordingly, we hold that the trial court erred in granting summary judgment to defendants. For the foregoing reasons, plaintiff's assignments of error are sustained and the judgment of the trial court is reversed.

*Judgment reversed*
*and cause remanded.*

BOWMAN and TYACK, JJ., concur.