OPINION
This appeal is brought by Appellant, Paragon Networks International ("Paragon"), from a judgment of the Court of Common Pleas of Marion County, dismissing Appellant's breach of warranty and fraud case against Macola, Inc. ("Macola") pursuant to Civ.R. 12(B)(6). This appeal presents the issue of whether the "License Agreement and Limited Product Warranty" constitute an integrated contract that forecloses any other warranties made by Macola's advertisements or by law.
On April 1, 1998, Paragon, a Delaware corporation, filed a class action complaint in the Court of Common Pleas of Marion County against Macola, an Ohio corporation that develops and supplies computer software. The complaint was subsequently amended on August 14, 1998. Paragon claimed that it had acquired Macola Progression Series software Version 6.0 ("Version 6.0") in 1995, pursuant to a standard written License Agreement, which contained a date processing defect that severely affected its utility after December 31, 1999. Paragon further claimed that this defect was contrary to representations made by Macola that the product was "Software You'll Never Outgrow." Thus, Paragon's first cause of action was a claim against Macola for breach of express warranty. Paragon's second cause of action alleged that Macola induced Paragon and the other members of the class to purchase the software by Macola's false and misleading representations about its software. Paragon filed its amended complaint on behalf of itself and other Macola Version 6.0 purchasers who had or will have suffered the replacement/upgrade costs of obtaining year 2000 compliant software.
On August 31, 1998, Macola filed a motion to dismiss all counts of the amended complaint for failure to state a claim, under Civ.R. 12(b)(6). Macola claimed that the written License Agreement constituted the parties' only contract with respect to the software at issue. Pursuant to the terms of this agreement, which superceded all other communications and representations between the parties, the software Macola sold to Paragon carried a 90 day limited warranty. Paragon filed a memorandum in opposition to this motion on October 15, 1998. On December 16, 1998, the trial court found the License Agreement was valid and enforceable. Under its terms, the court found Paragon had no cause of action for breach of express warranty or fraud, and granted Macola's motion to dismiss.
Paragon now appeals the decision of the common pleas court, asserting the following assignment of error:
 The trial court erred in granting defendant's motion to dismiss the Amended Complaint.
 In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Civ.R. 12(B)(6), "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." O'Brien v. University Community Tenants Union (1975), 42 Ohio St.2d 242, syllabus; York v. Ohio State Hwy. Patrol
(1991), 60 Ohio St.3d 143, 144. Further, "[i]n construing a complaint upon a motion to dismiss for failure to state a claim, we must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." Mitchell v. Lawson Milk Co.
(1988), 40 Ohio St.3d 190, 192; Phung v. Waste Management, Inc. (1986), 23 Ohio St.3d 100, 102.
Appellate review of a ruling on a Civ.R. 12(B)(6) motion presents a question of law which we determine de novo. Bell v.Horton (1995), 107 Ohio App.3d 824, 826.
According to Appellant's amended complaint, Macola marketed its Version 6.0 software through advertisement and product literature as "Software You'll Never Outgrow," with the recognition that the last thing users "want to be thinking about is replacing [a] * * * system in a couple of years." This literature purportedly indicated to users that Macola created their software "to meet the demands of * * * growing business[es]" and that "an investment in Macola is a long-term relationship." Appellant claims these statements constituted express warranties to the purchaser that the software would not be of temporal use. The fact that the software will not recognize and process dates after December 31, 1999, commonly referred to as the year 2000 ("Y2K") problem, is a defect that Appellant claims breaches this express warranty. Appellant argues that since Macola knew about the temporal life of its software at the time it made the express warranties to purchasers, that this knowledge established the basis for Appellant's fraud claim.
Macola argues that none of the express warranties alleged by Appellant are valid or enforceable since the only warranties that apply to its Version 6.0 software are expressly set out in the parties' License Agreement. Macola argues that this agreement constitutes the sole contract with respect Appellant's purchase of the software license. We agree.
Although Appellant makes a number of arguments in an attempt to deny the existence of a valid license agreement, we find that Appellant has admitted, without qualification, that it acquired the Macola software pursuant to the License Agreement in its amended complaint. Appellant stated therein that:
 The Macola Progression Series software acquired by plaintiff and the members of the Class were acquired pursuant to a standard written License Agreement with Macola entitled "Macola, Inc. License Agreement And Limited Product Warranty," attached hereto as Exhibit A. * * * A copy of this standard written License Agreement was provided to plaintiff and each and every member of the Class in connection with their acquisition of Macola Progression Series software in identical or substantially the same form. By its express terms, this License Agreement provides privity of contract between Macola and plaintiff and other members of the Class.
(Am. Complaint, ¶ 30.)
 On appeal, Appellant contends that the License Agreement is unenforceable because of lack of consideration, lack of a meeting of the minds, and unconscionability. These arguments are all based on Appellant's untimely and gratuitous factual allegation that the License Agreement document was contained inside Macola's software packaging, and thus, as a practical matter, it was impossible for purchasers to read, much less agree to, the terms of the agreement prior to the time of sale.
We find such facts alleged by Appellant to be wholly outside the record in this case. When reviewing a judgment of dismissal under Civ.R. 12(b)(6), both Appellant and this court are bound by the factual allegations in the complaint. Although we are to make all reasonable inferences in favor of the non-moving party, no reasonable inferences justify the conclusion that Appellant did not see and agree to the License Agreement at the time of sale. Indeed, it was Appellant that attached a copy of the entire License Agreement with its amended complaint to demonstrate privity of contract and the applicability of Ohio law, stating that it obtained the software "pursuant to" the License Agreement. Nowhere in the amended complaint did Appellant deny or limit the extent to which it believed the agreement was enforceable and it will not be heard to do so now.
We now turn to the allegations that do appear in the complaint. Even if we view Appellant's allegations as true, that Macola made express warranties to it regarding the longevity of Version 6.0 software, Appellant's breach of warranty claim fails under the language of the License Agreement. The License Agreement contained an integration clause which stated that "unless specifically covered by another written license agreement, * * * [this Agreement] is the complete agreement between us and it supersedes any prior purchase order, communications, advertising or representations." Appellant has not alleged the existence of "another written license agreement."
Furthermore, the License Agreement also provided the following: LIMITED WARRANTY
 EXCEPT AS SPECIFICALLY STATED IN THIS AGREEMENT, THE SOFTWARE AND RELATED MATERIALS ARE PROVIDED AND LICENSED "AS IS" WITHOUT WARRANTY OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED, TO THE IMPLIED WARRANTIES OR MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.
 * * *
 For a period of ninety (90) days from the date of initial delivery of the Software to you, Macola warrants to you that the Software as delivered will substantially perform the functions or generally conform to the Software's specifications published by Macola * * *.
 Macola also warrants to you that the disks on which the Software is furnished will be free from defects in materials and workmanship under normal use for a period of thirty (30) days from the date of delivery to you.
The statements which Appellant claims give rise to an express warranty were extracted from an April 1993 Macola press release and the Macola "Guidebook to Accounting/Distribution Applications" for Version 6.0. According to Appellant's amended complaint, the guidebook "was provided to prospective Macola customers in orderto induce them to acquire Progression Series software, Version6.0." (Emphasis added.) (Am. Complaint ¶ ¶ 11 and 18.) Clearly, the advertising slogan and other marketing puffery disseminated by Macola that Appellant credits for creating an express warranty constitute "prior communications, advertising, or representations." (Emphasis added.) Under the clear language of the License Agreement, effective at the time of sale and as agreed to by the parties, these representations were superceded by the terms contained therein, which provide only a limited 90 day warranty. For these reasons, Appellant's breach of express warranty cause of action fails to state a claim for relief, under Civ.R. 12(b)(6).
Our review of Appellant's fraud claim must begin with the recognition of a longstanding rule of substantive law. The parol evidence rule establishes the principle that if contracting parties have integrated their negotiations and promises into a final written and unambiguous agreement, then evidence of prior or contemporaneous negotiations and representations that pertain to the terms of the final agreement are excluded from consideration by the court. Ed Schory Sons, Inc. v. Soc. Nat'l. Bank (1996),75 Ohio St.3d 433, 440, citing Charles A. Burton, Inc. v. Durkee
(1952), 158 Ohio St. 313. The parol evidence rule protects the integrity of final, written agreements by prohibiting the contradiction of the terms of the contract with evidence of other alleged agreements. Id.
One exception to the parol evidence rule is that a party may offer evidence of prior or contemporaneous representations to prove fraud in the execution or inducement of an agreement.Busler v. D H Mfg., Inc. (1992), 81 Ohio App.3d 385, 390;Bollinger, Inc. v. Mayerson (1996), 116 Ohio App.3d 702, 712. "A classic claim of fraudulent inducement asserts that a misrepresentation of facts outside the contract or other wrongful conduct induced a party to enter into the contract." ABM Farms,Inc. v. Woods (1998), 81 Ohio St.3d 498, 503; see, also, Hallerv. Borror Corp. (1990), 50 Ohio St.3d 10, 14.
Parties may not, however, prove fraud by claiming that the inducement to enter into an agreement was a promise that was within the scope of the integrated agreement but was ultimately not included in it. Busler, 81 Ohio App.3d at 390; Wall v.Firelands Radiology, Inc. (1995), 106 Ohio App.3d 313, 324. Simply put, a claim for fraud in the inducement must be premised on matters extrinsic to the written contract.
 In Nat'l. City Bank, Akron v. Donaldson (1994), 95 Ohio App.3d 241, the court explained why this must be so:
 A person of ordinary mind cannot say he was misled into signing a paper which was different from what he intended to sign when he could have known the truth by merely looking when he signed. * * * If this were permitted, contracts would not be worth the paper on which they are written. If a person can read and is not prevented from reading what he signs, he alone is responsible for his omission to read what he signs.
(Citations omitted.) Nat'l. City Bank, Akron,95 Ohio App.3d at 245, quoting Dice v. Akron, Canton Youngstown R.R. Co. (1951),155 Ohio St. 185, 191, reversed on other grounds (1952),342 U.S. 359.[1]
Appellant's fraud claim alleges that Macola made false and misleading statements by advertising its Version 6.0 software as "Software You'll Never Outgrow" when the company knew and omitted mention of the fact that the software contained the Y2K defect which would require a fix within a few years of sale. Appellant's contention that Macola made misrepresentations regarding the useful life of its product implies a warranty, which is in direct conflict with the License Agreement, wherein warranties are specifically addressed. Appellant is prohibited by the parol evidence rule from establishing fraud by claiming that the inducement to enter into an agreement was a promise that was within the scope of the integrated agreement but was ultimately not included in it. See Busler, supra. Consequently, any allegation by Appellant that it was misled into believing that Version 6.0 was warranted to substantially perform and conform to specifications for any period in excess of 90 days is barred by the parol evidence rule. We conclude that Appellant's claim of fraud fails to state a claim for relief, pursuant to Civ.R. 12(b)(6). Therefore, Appellant's assignment of error is overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 BRYANT, P.J., and HADLEY, J., concur.
[1] We note that this quote from Nat'l. City Bank, Akron speaks in part of the acceptance of contract terms being evidenced by a signature. Acceptance my take different forms. In this case, the License Agreement at issue provided that acceptance of the terms and conditions of the agreement would be manifested by the purchaser's act of opening the software package.